# COURT OF APPEALS
## DECISION
## DATED AND FILED

## January 30, 2020

**Sheila T. Reiff**
**Clerk of Court of Appeals**

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP1931**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CV125

**IN COURT OF APPEALS**
**DISTRICT IV**

JOSEPH TAGGART AND KARLA TAGGART,

    PLAINTIFFS-RESPONDENTS,

  V.

TOWN OF LITTLE WOLF,

    DEFENDANT-APPELLANT,

DAVID BREE, MARGARET BREE,
WAYNE GIERACH AND BONNIE GIERACH,

    DEFENDANTS-RESPONDENTS,

MARK VAN LINN, KEVIN HANDRICH
AND MARGIE HANDRICH,

    DEFENDANTS.

APPEAL from a judgment of the circuit court for Waupaca County: TROY L. NIELSEN, Judge. *Modified and, as modified, affirmed.*

Before Blanchard, Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   The Town of Little Wolf appeals the judgment of the circuit court declaring that a 1/4-mile segment of a road near property owned by Joseph and Karla Taggart became a town highway after it was laid out by order of the Town in 1898 as part of a 1½-mile town highway, and that the 1/4-mile segment remains part of a town highway.[1]   The circuit court determined on summary judgment that there is no genuine issue of material fact that the disputed 1/4-mile segment now qualifies as being part of a town highway, as opposed to either always having been a private road or to having reverted to the status of a private road.   Stated in statutory terms, the court determined that there are no genuine issues of material fact about whether the disputed segment became a "legal highway" pursuant to WIS. STAT. § 82.31(1) (2017-18),[2] and also no genuine issues of material fact about whether the disputed portion was

---

[1] For ease of reference we use the present tense (the Taggarts "own" the parcel) but the past tense would be more accurate.  At oral argument and in subsequent letter briefing to this court, we learned that the Taggarts sold the parcel at issue in May 2019, the same month that the Town filed its reply brief in this appeal.  However, when we asked about potential mootness or standing concerns, both sides have taken the position that the Taggarts may continue to pursue this appeal.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

"discontinued" as a "public highway" pursuant to WIS. STAT. § 82.19(2).[3] We agree with the Taggarts that the circuit court's declaration regarding the disputed segment is proper based on the evidence submitted by the parties, applying interpretations of the applicable statutes that the Town either advances or does not dispute.

¶2 In what amounts to a sub-issue, the Town contends that the circuit court erroneously designated as part of the town highway a 332-foot portion that extends beyond the disputed 1/4-mile segment, because there is no evidence to support declaring the 332-foot portion part of the town highway. As the Taggarts acknowledge on appeal, they conceded the point in the circuit court, forfeiting the issue for purposes of this litigation.

---

[3] WISCONSIN STAT. § 82.31(1), entitled "Validation of highways," provides in pertinent part:

> **(1)** RECORDED HIGHWAYS. Any recorded highway that has been laid out under this chapter is a legal highway only to the extent that it has been opened and worked for 3 years.

WISCONSIN STAT. § 82.19 is entitled "Discontinuation of highways," and in subsection (2) provides in pertinent part:

> (a) Every highway shall cease to be a public highway 4 years from the date on which it was laid out, except the parts of the highway that have been opened, traveled, or worked within that time.

> (b)1. In this paragraph, "vehicular travel" means travel using any motor vehicle required to be registered under ch. 341 or exempt from registration under s. 341.05.

> 2. Any highway that has been entirely abandoned as a route of vehicular travel, and on which no highway funds have been expended for 5 years, shall be considered discontinued.

¶3      Accordingly, we direct that the judgment be modified to account for the 332-foot portion, but affirm the judgment as modified.

## BACKGROUND

¶4      The Taggarts commenced this action in May 2017, in pertinent part seeking a declaration that a portion of a road now referred to as Swamp Road is "a public right-of-way."[4]  Allegations in the subsequently filed amended complaint include the following.

¶5      On October 4, 1898, the amended complaint alleges, Town representatives

> laid out a 66 foot wide public right-of-way known as "Swamp Road" from the Quarter line between Sections 8 and 17 (at [County Highway] N), for a distance [running westward] of one and one half miles between Sections 8 and 27 to the common line between the Town of Little Wolf and [the Town of] St. Lawrence.

This describes a 1½-mile town highway, running east-west, laid out from, on its east end, County Highway N, to, on its west end, the Township line with the Town of St. Lawrence.  Attached to the amended complaint is a copy of a Town order dated October 4, 1898, corresponding to this allegation.

_____

[4] The complaint contains an alternative request for relief, namely, an award of compensatory damages for "the taking of the property right of public access without due process."  However, neither side suggests that we need to address the topic of a potential taking if we affirm the judgment as modified, and we address this topic no further.

Separately, for ease of reference, we use the term "Swamp Road" to refer to all or any part of the 1½-mile highway laid out by the Town in 1898, recognizing that the parties disagree about whether particular portions of the 1½-mile Swamp Road qualify as being part of a town highway.

¶6      We pause to note that the Town does not dispute that the Taggarts have established that the entire 1½-mile length of Swamp Road was properly "laid out" by the Town in October 1898, as the phrase "laid out" is used in WIS. STAT. § 82.19(2)(a).

¶7      Returning to the amended complaint, it alleges that after the Town issued its 1898 lay-out order, the eastern-most one-mile segment (that is, the first mile running west from County Highway N) "has been opened, travelled[,] and worked as a Town highway."  At the same time, according to the amended complaint, the remaining "[a]pproximately … [w]est 1/2 mile" of Swamp Road "has not been opened or worked."  However, the amended complaint continues, this west 1/2 mile "has been used as a way of travel by the … Taggart[s] and the public."

¶8      The amended complaint further alleges that property owned by the Taggarts, as well as property owned by four other sets of owners identified in the complaint (the Brees, the Gieraches, Van Linn, and the Handriches, collectively, "the other Swamp Road owners"), are all adjacent to Swamp Road, and that Swamp Road "provides direct public access" to these properties.[5]  The amended complaint states that "[t]he Swamp Road public right-of-way has been used by [the Taggarts and the other Swamp Road owners] along with the public as a way of travel."

---

[5] A word on the parties.  After we solicited responses regarding party status and interest from the other Swamp Road owners, who were originally listed as defendants in this case, we ordered that the caption of this appeal be amended to remove the respondent designation from the Van Linn and Handrich defendants, and we noted that the Bree and Gierach defendants indicated that they are aligned with the Taggarts.  Only the Taggarts and the Town have filed appellate briefs and participated in oral argument.

¶9     According to the amended complaint, "the Swamp Road public right-of-way," presumably meaning the entire 1½ miles, "has never been discontinued by" the Town and "has never been entirely abandoned as a route of travel."

¶10    The amended complaint further alleges that Swamp Road-abutting properties owned by the Taggarts and the other Swamp Road owners "are either benefitted or burdened by private easements which lie within the public right-of-way laid out by [the Town].  The private easements were created after the [Town] laid out the public right-of-way."

¶11    The Town has consistently acknowledged that the east 3/4 mile of Swamp Road is a town highway and has challenged only the proposition that the west 3/4 mile, including the disputed 1/4-mile segment, is a town highway.  The Taggarts have been less consistent.

¶12    In the circuit court, the Taggarts first argued that the entire west 3/4 mile should be declared a town highway.  However, as the Taggarts' appellate counsel acknowledged at oral argument, during the course of the litigation in the circuit court, the Taggarts' position shifted.  They ultimately asked the circuit court to determine, in the words of one pleading they filed late in the circuit court litigation process, only that "Swamp Road is a public road" from County Highway N, running west "*to the Bree property*," meaning to the eastern edge of the Bree property at Swamp Road.  (Emphasis added.)  The parties agree that the disputed 1/4-mile segment of Swamp Road extends to the eastern edge of the Bree property.

¶13    As we discuss below, this reference to the Bree property is significant on the 332-foot portion issue, because the following facts are

undisputed. The Bree parcel lies on the north side of Swamp Road, generally north of the Taggart parcel, which is on the south side of Swamp Road. But the boundaries of the Taggart and Bree parcels are not completely aligned, one on top of the other. While the western edges of the Bree and Taggart parcels are aligned, the eastern edge of the 40-acre Bree parcel is approximately 332 feet to the east of the eastern edge of the 30-acre Taggart property. Thus, extending the town highway to the eastern edge of the Bree parcel leaves a 332-foot gap between the west end of the disputed 1/4-mile segment and the eastern edge of the Taggart parcel.

¶14    After extensive briefing and argument to the circuit court, the court made the following determinations in granting summary judgment to the Taggarts: the contested portion of Swamp Road is the 1/4-mile segment "that leads to the Bree property" from the east; the evidence establishes that "the right-of-way historically served as the only public access to two farms in the SW 1/4 of Section 7 that included what is now the Bree property" and "Swamp Road was shown running to what is now the Bree property in a 1923 Waupaca County Atlas"; the contested 1/4-mile segment was "historically" a log road[6] and the Town contracted with the county to remove the log base; "the only reasonable inference from the evidentiary facts is that the contested portion of the right-of-way was necessary for public access for a number of parcels and was therefore opened, travelled[,] or worked within four years of the Town laying out the highway"; the evidence "establishes that the contested segment has never been entirely abandoned as a route of travel," with "consistent[]" use by "adjacent property owners" and

_____

[6] A log, or corduroy, road is created by placing logs perpendicular to the direction of the road, typically over a low or swampy area.

"undisputed evidence of some historical use by the public as well"; and "[t]here is no evidence that any part of the contested segment was difficult or impossible" for "vehicular travel" and the contested segment "remains in use for vehicular travel at the present time." The court concluded that Swamp Road "from the Quarter Line between Sections 8 and 17, westerly continuing to the Taggart property" is "a public highway," and accordingly issued declaratory judgment stating the same. The Town appeals.

## DISCUSSION

¶15 Summary judgment is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *See* WIS. STAT. § 802.08(2). We review a grant of summary judgment de novo, applying the same methodology as the circuit court. *Belding v. Demoulin*, 2014 WI 8, ¶13, 352 Wis. 2d 359, 843 N.W.2d 373.

¶16 Under the standard methodology, we determine whether the Taggarts have presented a prima facie case for summary judgment, and if so, then we examine the Town's opposing proof "to discern whether there 'exist disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle [the Town] to a trial.'" *See Swatek v. County of Dane*, 192 Wis. 2d 47, 61-62, 531 N.W.2d 45 (1995) (quoted source omitted).

### *332-foot portion*

¶17 We briefly address the 332-foot portion sub-issue and explain why we conclude that the judgment must be modified to declare that the town highway extends to the Bree parcel, not to the Taggart parcel.

8

¶18  As summarized above, the Taggarts argued in the circuit court that the town highway runs only "to the Bree property."  Further, as counsel acknowledged at oral argument, the primary evidence that the Taggarts provided to the circuit court on summary judgment (the affidavit of Wayne Gierach, which is discussed below), could have supported at most a determination that the town highway runs to the edge of the Bree parcel and not the additional 332 feet to the edge of the Taggart parcel.

¶19  We cannot readily discern what caused the circuit court to first make a determination that there is no genuine dispute that the end point is the Bree parcel, but then to order that the end point is the Taggart parcel.  In any case, however, the Taggarts acknowledge that their ultimate argument in the circuit court assumed that the town highway did *not* extend to the eastern edge of their parcel, but only to the eastern edge of the Bree parcel.  The Taggarts have forfeited this issue; they cannot prevail on an issue that they failed to present to the circuit court.  *See Gruber v. Village of North Fond du Lac*, 2003 WI App 217, ¶27, 267 Wis. 2d 368, 671 N.W.2d 692 ("Although this court engages in summary judgment review de novo, we nonetheless may apply [forfeiture] to arguments presented for the first time on appeal."); *see also Hopper v. City of Madison*, 79 Wis. 2d 120, 137, 256 N.W.2d 139 (1977) ("It is the practice of this court not to consider issues raised for the first time on appeal since the trial court has had no opportunity to pass upon them.").

¶20  As noted in *Gruber*, "[a]pplication of the [forfeiture] rule is appropriate where a [forfeited] argument could have been rebutted with factual information," *see Gruber*, 267 Wis. 2d 368, ¶27, and that fits the circumstances here.  By conceding the point in the circuit court, the Taggarts failed to alert the

Town of the need to present evidence on this point. This forfeiture resolves the 332-foot sub-issue for purposes of this litigation.

*Disputed 1/4-Mile Segment*

¶21    Turning to the more general summary judgment issues, we conclude that the Taggarts have presented a prima facie case for summary judgment regarding the disputed 1/4-mile segment and that the Town fails to present opposing proof sufficient to entitle it to a trial. We reach this conclusion in large part because we reject the Town's main argument, which is to challenge the Gierach affidavit that was submitted by the Taggarts on summary judgment. The Town effectively argues that the Taggarts fail to present a prima facie case because we should ignore the Gierach affidavit, which provides support for the Taggarts' summary judgment motion.

*WISCONSIN STAT. § 82.31(1):  Valid Highway*

¶22    In effect, the first set of issues presented by the parties is whether the Taggarts have presented evidence sufficient to support a prima facie case for a declaration that the disputed 1/4-mile segment of Swamp Road became a valid town highway under WISCONSIN STAT. § 82.31(1) after the 1½-mile town highway was laid out, and if so whether the Town has rebutted that case, requiring a trial. We conclude that the Taggarts have established a prima facie case that the Town fails to rebut.

¶23    As mentioned above, the parties agree that there is no issue of fact about whether the disputed 1/4-mile segment was part of a recorded highway that was properly laid out by the Town in 1898, and it therefore began as a "recorded highway" for purposes of WIS. STAT. § 82.31(1). The issue under § 82.31(1) is

whether the Taggarts have offered proof that the recorded highway "has been opened and worked for 3 years." *See* § 82.31(1).

¶24    While the Taggarts cite statutory definitions and some case law, neither side provides us with a consistent argument that is based on a clearly articulated definition of the phrase "opened and worked for 3 years." In particular, the Town's brief-in-chief makes no serious effort to interpret pertinent terms of WIS. STAT. § 82.31(1). When questioned at oral argument, the Town cited the following statutory definitions: WISCONSIN STAT. § 82.01(7) defines "opened" to mean "the completion of work on a highway that places the highway in a condition ready for public use"; § 82.01(11) defines "worked" to mean "action of the town in regularly maintaining a highway for public use, including hauling gravel, grading, clearing or plowing, and any other maintenance by or on behalf of the town on the road." However, the Town has taken a pass on attempting to apply these or any other statutory or case law definitions to activities and road conditions along any part of what is now Swamp Road during the period 1898-1901.

¶25    In any case, solely for purposes of resolving this appeal, we accept one set of positions that the Town took at oral argument, which is that a recorded highway is "opened and worked" under WIS. STAT. § 82.31(1) when it is "passable," "welcome[s] the public," and has been "brought to a condition in which it's ready for public use." Under this standard, the Taggarts would prevail on this issue if they could prove that the disputed 1/4-mile segment was, between 1898 and 1901, passable, welcoming, and in a condition ready for public use.

¶26    As mentioned, an important element in the Taggarts' prima facie case is the Gierach affidavit. We now summarize the Gierach affidavit and

11

explain why we conclude that it contributes to a prima facie case that the disputed 1/4-mile segment was "opened and worked for 3 years" after it was laid out, pursuant to WIS. STAT. § 82.31(1), and why we reject the arguments that the Town makes about the affidavit. Then we turn to other evidence offered by the Taggarts, in addition to the Gierach affidavit, in support of their prima facie case.

¶27     Gierach averred that he owns property on the north and south sides of Swamp Road, near to and just east of the Taggart and Bree parcels. Gierach has "lived and farmed along Swamp Road for 38 years (since 1980)." When Gierach first started living along Swamp Road, he "believed it was a public road." Gierach further averred that "[i]t is historically known that Swamp Road was opened, traveled[,] or worked up to what is now the Bree property." At the Bree property, "a private road ran to the north and served two farms." "Swamp Road provided public access."

¶28     Gierach further averred that he could not say when Swamp Road "was first worked other than to say it has been opened and worked for a very long time. Part of Swamp Road was a log road where logs were laid over low spots."

¶29     Gierach further averred that his understandings about the history summarized above are confirmed in a 1923 Waupaca County Atlas, one page of which is attached to his affidavit.[7] The 1923 atlas page, for "Township 23 North, Range 13 East of the 4th [Principle Meridian]," appears to show a road that travels from the east to what is now the Bree parcel and then takes a right-angle turn to

---

[7] While the Town raises what it submits is an interpretation issue regarding the 1923 atlas, which we address in the discussion below, the Town does not argue that the pertinent page from the atlas could not be authenticated and admitted as substantive evidence at a trial.

the north. The 1923 atlas page further shows that, after turning north, the apparent road passes by two 40-acre parcels and dead ends at two other 40-acre parcels.

¶30 Gierach also averred that the Town "maintained Swamp Road to the Bree property from 2002 until 2014."

¶31 The Gierach affidavit and its attachments do not offer a lot in the way of concrete examples and detail backing up the "it is historically known" concept. If a trial were held, Gierach might be subject to cross examination rendering his statements to be of less probative force. At the same time, however, we conclude that the substance of the affidavit and its attachments could provide a reasonable basis for a fact finder at trial to draw reasonable inferences about activity along what is now Swamp Road beginning in 1898, continuing to 1923, and on to 1980 and the present day, when considered in the context of other evidence, as we discuss further below. The Town fails to support its position that the Gierach affidavit and its attachments are inadmissible or lack any probative force such that they do not support the Taggarts' prima facie case for summary judgment.

¶32 We now address in turn each of the challenges that the Town makes to the Gierach affidavit. The first is based on the so-called sham affidavit rule. "[F]or purposes of evaluating motions for summary judgment pursuant to WIS. STAT. § 802.08, an affidavit that directly contradicts prior deposition testimony is generally insufficient to create a genuine issue of fact for trial, unless the contradiction is adequately explained." *Yahnke v. Carson*, 2000 WI 74, ¶21, 236 Wis. 2d 257, 613 N.W.2d 102. The Town's argument is that we should ignore the Gierach affidavit because it contradicts deposition testimony that Gierach gave in

litigation separate from this case in 2003. We now explain why we reject this first challenge to the affidavit.

¶33 The Town points to two, non-sequential pages from a longer deposition that Gierach gave in the 2003 litigation. The Town argues that these two pages "illustrate[]" Gierach's "belief that he had the authority to control access to and block the [disputed segment] and it was not open to the public," and also show that Gierach "recognized the private property rights of the others along the [disputed segment], like the Handriches, who placed a gate across their portion of the gravel drive, to exclude the public." However, the two non-sequential pages of deposition testimony that the Town relies on do not establish Gierach's clear belief on any point that matters. These isolated snippets of testimony leave completely unanswered critical contextual points that include, but are not limited to, the location and duration of alleged activity that Gierach was asked to address in this testimony. And, the Town fails to cite to record evidence that could provide meaningful context for these snippets. The 2003 litigation was a separate action from this one, and our obligation here is to resolve the current arguments of the parties based on the summary judgment record submitted to the circuit court in this action. We ignore arguments by the Town that are not properly tied to relevant and admissible evidence that was submitted to the circuit court in this action, and the out-of-context deposition snippets do not establish the existence of the direct contradiction of the type required under *Yahnke*.[8]

---

[8] We observe that this is one example of a general problem with the Town's briefing. The Town repeatedly makes assertions of fact that are not accompanied by any citation to evidence in the record or that are accompanied by a citation that does not direct us to admissible, relevant evidence.

¶34    The Town's second challenge to the Gierach affidavit is that it consists only of "inadmissible hearsay" and is not based on personal knowledge, because "Mr. Gierach has no personal knowledge as to the 'facts' he alleges in the affidavit." At oral argument, counsel for the Taggarts countered that the Gierach averments were based on what was historically "common knowledge" in Gierach's view, which are averments covered by "the hearsay exceptions, it's reputation." We construe the Taggarts to effectively argue that Gierach's testimony about his understanding of the history of Swamp Road is admissible under WIS. STAT. § 908.03(20). This exception to the hearsay rule provides that evidence of "[r]eputation in a community, arising before the controversy, as to ... customs affecting lands in the community, and reputation as to events of general history important to the community … in which located[,]" is not excluded by the rule. The Town fails to advance an argument that would undermine application of § 908.03(20) here, and we agree that the limited hearsay and lack-of-personal knowledge objections raised by the Town are refuted by this hearsay exception.

¶35    The Town's third challenge to the Gierach affidavit is to briefly suggest that various of its averments are "misleading." We understand the Town to mean that some averments are insufficiently precise to stand as proof of any relevant proposition. However, as we have noted, while the Gierach affidavit is light on details, it has some potential probative force.

¶36    In sum, we reject the Town's challenges to the Gierach affidavit as evidence supporting a prima facie case. As we now discuss, the Town also fails to demonstrate that other evidence offered by the Taggarts does not support their prima facie case that the disputed 1/4-mile segment was "opened and worked for 3 years" after it was laid out, pursuant to WIS. STAT. § 82.31(1).

¶37    Notably, this evidence includes what Joseph Taggart avers is an accurate, contemporary depiction of Swamp Road and parcels along it, which has the appearance of an annotated plat map, to which the Town poses no objection based on authentication or admissibility.  This depiction can be compared, side-by-side, with the 1923 atlas page in a manner that supports the Taggarts' arguments.

¶38    In addition, the Town acknowledged at oral argument that the Taggarts have established for purposes of summary judgment that, in 1898, six owners of parcels abutting what is now Swamp Road applied to lay out a 1½-mile town highway.  It is at least one reasonable inference that these applicants were farmers with parcels along the road who were eager for there to be public use of this highway to allow general public access to their farms.  And, as already referenced, the evidence includes an attachment to the complaint of a copy of the "Record of the Boundaries of Road Districts" reflecting the laying out of the entire 1½-mile highway by the Town on October 4, 1898.  This document states that Town representatives had "proceed[ed] to examine personally said highway" and were of the "opinion that the public good will" "be promoted" by the existence of the town highway.  This language may be somewhat ambiguous, but it could be interpreted to suggest either an intention of Town officials to take near-term steps to render the laid out highway available for public use or an opinion that little or nothing further needed to be done to render it available for public use, given turn-of-the-last-century modes of travel.

¶39    We conclude that all of this evidence gives rise to a possibly weak, but nonetheless reasonable, inference that the disputed 1/4-mile segment—up to the point of what is now the Bree parcel—was between 1898 and 1901 passable, welcoming, and in a condition ready for public use, satisfying the prima facie case

under WIS. STAT. § 82.31(1). In particular, it is at least a reasonable inference that what is reflected in the 1923 atlas page and what Gierach understood starting in 1980 were the product of activity between 1898 and 1901 that rendered the highway, up to what is now the Bree parcel, passable, welcoming, and in a condition ready for public use. The reasonable inference is that the highway was "opened and worked" to this point, even if the strongest inference might be that public use would have consisted primarily if not entirely of farm families and their visitors coming and going from farms located around the current location of the eastern edge of the Bree parcel.

¶40 We now address what is, so far as we can discern, the only additional argument that the Town makes opposing Taggart's prima facie case under WIS. STAT. § 82.31(1). The Town argues that the 1923 atlas page "makes no distinction between any public road running east and west and a private road running north and south." We take this to be the following argument: the 1923 atlas page must be ignored as inaccurate because it fails to indicate, at the southeast corner of what is now the Bree parcel, an ending point for an east-west laid-out town highway and a beginning point of what is indisputably a private drive running to the north. We fail to see the value in this point. What matters in this dispute is evidence bearing on, or raising reasonable inferences regarding, turn-of-the-last-century conditions and uses of the highway up to the point of what is now the eastern edge of the Bree parcel. So far as the Town explains its argument, failure of the 1923 atlas page to characterize the road that is shown heading north as public or private is beside the point. Indeed, if anything, the existence of a private driveway that connects to the laid-out Swamp Road only further reinforces the idea that area residents were regularly traveling on Swamp Road to that point.

17

¶41 Having rejected the Town's arguments effectively challenging whether the Taggarts have made a prima facie case under WIS. STAT. § 82.31(1), we note that the Town fails to identify any competing inference from the evidence offered by the Taggarts that would defeat summary judgment. The Town fails to address how a reasonable inference can be drawn from this evidence that whatever interest there was in petitioning for a road extending the full length of current-day Swamp Road in 1898 was simply not followed up with travel by at least the land owners on the road itself, during the period between the road's laying out pursuant to the petition and the reasonably inferable travel along the road from 1923 and beyond.

¶42 Further, as we now address, we understand the Town to offer only one series of purported evidentiary bases to rebut the prima facie case. The Town states, without further explanation, that "[v]arious plat maps throughout the years have shown the road ending at different places," and provides citations to two sets of maps that were attached to affidavits submitted to the circuit court. We reject this "at different places" argument based on a lack of development. A generalized reference to "different" things being shown on "various plat maps" is not sufficient to describe evidence that rebuts the prima facie case. *See State v. Jackson*, 229 Wis. 2d 328, 337, 600 N.W.2d 39 (Ct. App. 1999) ("A party must do more than simply toss a bunch of concepts into the air with the hope that either the ... court or the opposing party will arrange them into viable and fact-supported legal theories."). Further, as we now explain, even if the Town had attempted to develop an argument along these lines, we would not be persuaded that the maps could reasonably serve to rebut the Taggart's prima facie case.

¶43 One set of maps, attached to an affidavit of counsel for the Taggarts, appears to add nothing to the analysis that would not support the Taggarts' prima

18

facie case, because lines on the maps appear to indicate road use that would favor the Taggarts' arguments.

¶44    The other set of maps could in theory be relevant to support the Town's attempt to rebut the prima facie case.  However, as we now explain, the Town fails to provide a basis to treat the second set as admissible and relevant to rebut the prima facie case.  These maps are attached to an affidavit of the person who was the Town clerk in November 2017.  The clerk avers that the maps are 1951, 1955, and 1980 highway maps "maintained and utilized by the County of Waupaca and the State of Wisconsin Department of Transportation—Division of Highways."  The Town appears to rely on the clerk's affidavit and these highway maps because notations on the maps purport to indicate that the "town road" occupying the current Swamp Road location extended only about 3/4-mile west of County Highway N (two maps state ".75" and the other states ".28" plus ".48").

¶45    However, the clerk does not explain how either or both of the two separate agencies (the county and the state department of transportation) maintained and used each map, or who created any of them or for what purposes, using what criteria.  Nor does the clerk provide an evidentiary basis to conclude that the clerk (or any other person for that matter) could testify to the sources and intended meanings of the notations.

¶46    Further, unlike the maps presented by the Taggarts for the purpose of merely demonstrating the existence of a physical, traveled road, regardless of legal status, the meanings of the maps attached to the clerk affidavit are not self-evident.  There is no indication from the clerk's averments or on the maps themselves how "town road" might have been defined for purposes of creating any of these maps.  As a consequence of these failures, the Town provides insufficient

19

basis to conclude that the clerk's averments regarding the maps represents relevant, admissible evidence.

¶47   The clerk's affidavit references the maps in a conclusory manner. The clerk asserts, apparently based entirely on the notations themselves, that "[a]t some point in time between the [1898] laying out order and 1951[,] the Town" had "construct[ed] and open[ed] Swamp Road" from County Highway N west "for a distance of approximately 3/4 of a mile." Further, however, the clerk avers that, "[f]*or an undetermined amount of time*, Waupaca County, at the request of the Town of Little Wolf, did add gravel to and plow an additional stretch of gravel lane from the [east] end of Swamp Road *to the eastern property line of the Bree* [*parcel*]. This practice ended at some point prior to May 15, 2012." (Emphasis added.)

¶48   For all of these reasons, even if the Town had developed an argument on this point, we see no reason to think that the averments of the clerk, referencing the maps, could represent admissible and relevant evidence serving to rebut the Taggart's prima facie case:   that the disputed 1/4-mile segment—up to the point of what is now the Bree parcel—was between 1898 and 1901 passable, welcoming, and in a condition ready for public use, satisfying the prima facie case under WIS. STAT. § 82.31(1).

¶49   In sum, the Town's only efforts to rebut the Taggarts' prima facie case are to challenge one piece of evidence (the Gierach affidavit), to fail to address other evidence, and to point to maps of undeveloped evidentiary importance.   In making only these arguments, the Town fails to identify reasonable inferences from any admissible evidence that the disputed portion of Swamp Road did not become a valid highway.

*WISCONSIN STAT. § 82.19(2): Discontinued Highway*

¶50     The second set of issues presented by the parties is whether there is a genuine issue of material fact about whether the disputed 1/4-mile segment has been discontinued as a public highway under WIS. STAT. § 82.19(2).  The issue under § 82.19(2) is whether the Taggarts have established that the Town presents insufficient evidence that the disputed segment has not "cease[d] to be a public highway 4 years from the date on which it was laid out" because it was not "opened, traveled, or worked within that time," and that it has not been "entirely abandoned as a route of vehicular travel."  *See* § 82.19(2).[9]

¶51     In seeking a declaration on this issue, the Taggarts have the benefit of the rule that a party arguing that a highway has been discontinued under WIS. STAT. § 82.19 (here, the Town) faces the higher civil burden of proof, which requires evidentiary proof to a reasonable certainty by evidence that is clear and convincing.  *See* ***Town of Schoepke v. Rustick***, 2006 WI App 222, ¶¶11-14, 296 Wis. 2d 471, 723 N.W.2d 770.  "[A]pplying the higher burden of proof is consistent with Wisconsin case law addressing property rights; in particular, the public's right to use roadways."  ***Id.***, ¶12.

¶52     The parties here have made insufficient attempts in their briefing and at oral argument to provide arguments based on supported, clear definitions for pertinent terms in WIS. STAT. § 82.19(2).  In particular, at oral argument both sides

---

[9] We need not, and do not, address the clause in WIS. STAT. § 82.19(2)(b)2., addressing the situation in which "no highway funds have been expended for 5 years."  This issue is resolved against discontinuance of the town highway if the highway has not "been entirely abandoned as a route of vehicular travel," and we explain in the text why we conclude that the Taggarts prevail on the entirely abandoned travel issue.

struggled to harmonize WIS. STAT. §§ 82.31(1) and 82.19(2). In any case, however, even beyond all related arguments of the Town that we have already rejected above, we conclude that there are two reasons that the Town cannot show to a reasonable certainty by evidence that is clear and convincing that the disputed segment ceased to be a public highway four years from the date on which it was laid out and that it has been entirely abandoned as a route of vehicular travel. First, the Town's argument appears to read the term "traveled" entirely out of § 82.19(2)(a). Second, the Town fails to point to evidence rebutting the prima facie case by the Taggarts that the disputed segment has not been "entirely abandoned as a route of vehicular travel," as that phrase is used in § 82.19(2)(b).

¶53 On the first point, to repeat, WIS. STAT. § 82.19(2)(a) provides that highways cease to be public four years from the date of being laid out "except the parts of the highway that have been opened, traveled, *or* worked." (Emphasis added.) We repeatedly pressed counsel for the Town at oral argument for any evidence that could undermine the ability of the Taggarts to show that the laid out highway was "traveled" before 1902, and for that matter has been "traveled" routinely ever since. However, we failed to discern a coherent answer that we have not rejected above, separate from the second point that we now address.

¶54 On the second point, the Town does not argue that the Taggarts cannot prove regular vehicular travel on the disputed segment. Instead, the Town suggests that this could not count for purposes of WIS. STAT. § 82.19(2)(b), because "[t]he vast majority of vehicular travel … has been permissive in nature and consistent with either fee interest in … property or an easement, such as the deeded easement owned by the Taggarts." Assuming without deciding that this assertion, if based on proper evidentiary submissions, could properly be used to rebut the Taggarts' proof of regular vehicular travel, the Town fails to point to

specific evidence in the summary judgment record to support the assertion. That is, assuming that case law interpreting § 82.19(2)(b) could support the Town's argument, the Town's briefing does not contain a citation to any admissible evidence submitted to the circuit court to support the factual assertion on which the argument depends.

## CONCLUSION

¶55 For all these reasons, the Taggarts have forfeited the argument regarding the 332-foot portion, but have shown that there is no genuine issue of material fact regarding the disputed 1/4-mile segment. We modify the judgment to state that the town highway extends to the eastern edge of the Bree parcel, not to the eastern edge of the Taggart parcel, and affirm the judgment as modified.

*By the Court.*—Judgment modified and, as modified, affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.