**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 22, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.  2022AP713
2022AP714
2022AP715
STATE OF WISCONSIN**

Cir. Ct. Nos.  2019TP248
2019TP249
2019TP250

**IN COURT OF APPEALS
DISTRICT I**

APPEAL NO. **2022AP713**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO **I.A.H.**, A PERSON UNDER THE AGE OF **18**:

**L.E.H.,**

PETITIONER-RESPONDENT,

V.

**R.E.M.,**

RESPONDENT-APPELLANT.

APPEAL NO. **2022AP714**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO **N.H.H.**, A PERSON UNDER THE AGE OF **18**:

**L.E.H.,**

PETITIONER-RESPONDENT,

V.

**R.E.M.,**

RESPONDENT-APPELLANT.

APPEAL NO. 2022AP715

IN RE THE TERMINATION OF PARENTAL RIGHTS TO M.F.H., A PERSON UNDER THE AGE OF 18:

L.E.H.,

      PETITIONER-RESPONDENT,

  V.

R.E.M.,

      RESPONDENT-APPELLANT.

---

APPEALS from orders of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge. *Affirmed.*

¶1    DUGAN, J.[1] Rebecca appeals from orders of the circuit court terminating her parental rights to her three children.[2] On appeal, Rebecca argues that the circuit court improperly granted summary judgment on the grounds alleged in the petition to terminate her parental rights, and she argues that the circuit court created the appearance of bias by conducting the adoption hearing at the end of the disposition hearing. For the reasons set forth below, this court affirms.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] To maintain the confidentiality of these proceedings, this court uses pseudonyms to refer to the parties.

## BACKGROUND

¶2　Luke and Rebecca have three children together. Their relationship ended, and pursuant to a family court order entered in 2015, Luke and Rebecca shared custody and physical placement of the children.

¶3　Subsequently, the children's school reported that the children came to school wearing the same clothes for several days in a row, were unfed, and were excessively absent with no excuse provided on days that Rebecca had placement of the children. The school filed reports with Child Protective Services, and the school also documented that Rebecca appeared intoxicated at one of the children's school pageants. Further events uncovered that Rebecca had no power at her home, did not always have food available for the children, would leave the children unattended for long periods of time, was often unresponsive to the children when she was home,[3] and as the oldest child later told Luke, they would do their homework by candlelight in the "spider room" and the oldest child would try to feed her younger siblings by heating soup in the microwave at the beauty shop located on a lower level of the apartment building.

¶4　Consequently, Luke sought to have the family court order revised, and in November 2017, the family court entered a revised order that granted Luke sole custody and primary physical placement. The family court also ordered that Rebecca's placement and visitation were "held open," pending treatment for drug and alcohol addiction. In the order, the court found that Rebecca "had a documented history of substance abuse issues and continues to show signs of

---

[3] As the oldest child described for Luke, "Mom won't wake up" when she is home.

ongoing substance abuse," Rebecca "has been inconsistent in attempts to see" the children, and "she seems intoxicated" when she does appear for visits. The order also noted that Rebecca failed to appear at the hearing. Luke has retained sole custody and primary physical placement of the children since November 2017.

¶5     Luke filed a petition to terminate Rebecca's rights on December 18, 2019.[4] In the petition, Luke alleged grounds of abandonment, continuing denial of periods of physical placement or visitation, and failure to assume parental responsibility. In his supporting affidavit, Luke averred that Rebecca had not seen the children since approximately April 2017, and that since that time, Rebecca has collected a number of criminal charges, including operating while intoxicated as a fourth offense, possession of cocaine, and operating a vehicle without the owner's consent.

¶6     Luke moved for summary judgment on the grounds that Rebecca abandoned the children by failing to visit or communicate from late 2017 through 2018. He argued that Rebecca made only one attempt at communication with the children late in 2017, through Luke's wife, in which Rebecca requested contact information for the children and that Rebecca had no visitation or communication with the children during 2018.[5] In fact, Luke again contended that Rebecca had not seen the children since approximately April 2017. He further averred that neither he, nor his wife, nor the children had been in contact with Rebecca, and he

---

[4] Along with the petition to terminate Rebecca's parental rights, Luke and his wife also filed a petition to have his wife adopt the three children.

[5] It should be noted that Luke also averred that he and his wife maintained the same phone numbers and that Rebecca had used these phone numbers in the past to communicate with them.

4

argued that the lack of contact was undisputed because Rebecca also testified during her deposition that she only made the one attempt in late 2017 to contact Luke's wife.

¶7    Luke argued that it was further undisputed that Rebecca abused alcohol, used heroin and cocaine, and accumulated several criminal charges during 2018, when she was absent from the children's lives. He further argued that, based on Rebecca's deposition testimony, Rebecca's "good cause" for failing to maintain any contact was her "substance abuse disorder." He argued that any argument to that effect was undermined because Rebecca continued to maintain contact with—in fact, she was the primary caregiver for—a son she had after the end of her relationship with Luke.[6]

¶8    In response, Rebecca argued that "incarceration, addiction, and indigency" and Luke's "contentious disposition" prevented her from maintaining contact with the children and provided a "good cause" defense to the alleged abandonment in late 2017 and throughout 2018. She also submitted an affidavit in which she averred that she made multiple attempts to contact Luke and his wife throughout 2018.

¶9    The circuit court rejected Rebecca's arguments, and it granted Luke's motion for summary judgment on the grounds that Rebecca abandoned her

---

[6] Rebecca had two children after her relationship with Luke ended. One of these children currently resides in Arizona with his father, and Rebecca was in the midst of fighting to retain the rights to the other child at the time of these proceedings.

children.[7]   In granting Luke's motion, the circuit court found that Rebecca submitted a "sham affidavit"[8] in support of her motion for summary judgment in which she indicated—contrary to her deposition testimony—that she made multiple attempts to contact Luke and his wife throughout 2018.

¶10   The circuit court further rejected Rebecca's arguments as to good cause stating:

> The other thing I would note is while the court order in the family law case requires her to be in treatment before she can move for placement, it doesn't prohibit her from having contact.  There is no no-contact order anywhere in these facts, and specifically in that order is a warning that no parent can intentionally conceal the child from the other….  So even though maybe she was not in a position to have … placement, she had a right to have contact with her children.…  [I]nstead, she was absent from their lives for more than a year, which is way longer than three months and quite a bit longer than six months.

The circuit court also rejected Rebecca's good cause argument that she was too "debilitated" by her drug addiction saying:  "[S]he was living with another man with another child and fighting in another court about her rights to that child, and, you know, item 11 in her affidavit says because of this addiction, I had difficulty maintaining a consistent presence in my children's lives."

---

[7] The circuit court also dismissed the failure to assume parental responsibility ground, and the final ground for continuing denial of periods of physical placement or visitation was dismissed pursuant to a motion to dismiss that Rebecca filed.

[8] *See Yahnke v. Carson*, 2000 WI 74, ¶21, 236 Wis. 2d 257, 613 N.W.2d 102 (defining a "sham affidavit" as one "that directly contradicts prior deposition testimony … unless the contradiction is adequately explained").

¶11    The case then proceeded to the disposition hearing at which Luke, his wife, Rebecca, and the therapists for the children testified. After considering their testimony, the circuit court terminated Rebecca's parental rights. The circuit court noted that Rebecca had recently begun treatment for her addictions and was making progress. However, the circuit court stated that the events the children endured when Rebecca had placement were clearly traumatic for them and left them in an unsafe and unstable living situation, but by comparison their current situation with Luke and his wife put the children "in a really good place." Thus, after reviewing the factors found in WIS. STAT. § 48.426(3), the circuit court terminated Rebecca's parental rights.

¶12    Rebecca filed a postdisposition motion alleging that she received ineffective assistance of counsel in responding to Luke's motion for summary judgment and that the circuit court was objectively bias. The circuit court held a hearing at which trial counsel testified.[9] The circuit court denied Rebecca's motion, and Rebecca now appeals.

## DISCUSSION

¶13    On appeal, Rebecca presents two main arguments. Rebecca first argues that the circuit court improperly granted Luke's motion for summary judgment. She argues (1) that her trial counsel was ineffective for failing to present evidence of Luke's "history of domestic violence" and (2) that her trial counsel was ineffective for failing to present evidence that Luke's wife refused to facilitate contact between Rebecca and the children. Second, Rebecca argues that

---

[9] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

the circuit court left time at the end of the disposition hearing to process the adoption, thereby creating the appearance that the circuit court had predetermined her case. This court disagrees and addresses each argument in detail below.

### I. Claim of Ineffective Assistance of Counsel at Summary Judgment

¶14 Rebecca first argues that her trial counsel was ineffective for failing to raise two specific "good cause" defenses in response to Luke's motion for summary judgment. To prove ineffective assistance of counsel in a termination of parental rights proceeding, a parent must show two elements: (1) counsel's performance was deficient; and (2) the deficient performance resulted in prejudice to the defense. *A.S. v. State*, 168 Wis. 2d 995, 1005, 485 N.W.2d 52 (1992) (citations omitted) (adopting the analysis from *Strickland v. Washington*, 466 U.S. 668 (1984), for TPR proceedings). We need not address both prongs of the analysis if the defendant makes an insufficient showing on one. *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

¶15 "An ineffective assistance of counsel claim presents a mixed question of fact and law." *State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95. This court "will not reverse the circuit court's findings of fact unless they are clearly erroneous." *Id.* However, this court "independently review[s], as a matter of law, whether those facts demonstrate ineffective assistance of counsel." *Id.*

¶16 In this case, to determine whether trial counsel was ineffective, this court must also consider whether summary judgment would have been appropriate had trial counsel raised the two good cause defenses that Rebecca now identifies. "[S]ummary judgment may be employed in the grounds phase of a termination of

8

parental rights proceeding when there is no genuine factual dispute that would preclude finding one or more of the statutory grounds by clear and convincing evidence." *Oneida Cnty. DSS v. Nicole W.*, 2007 WI 30, ¶14, 299 Wis. 2d 637, 728 N.W.2d 652. The same standards found in WIS. STAT. § 802.08 apply. *Nicole W.*, 299 Wis. 2d 637, ¶14.

¶17　Pursuant to WIS. STAT. § 802.08(2), summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "A factual issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Strasser v. Transtech Mobile Fleet Serv., Inc.*, 2000 WI 87, ¶32, 236 Wis. 2d 435, 613 N.W.2d 142. "It is not enough to rely upon unsubstantiated conclusory remarks, speculation, or testimony that is not based upon personal knowledge." *North Highland Inc. v. Jefferson Mach. & Tool Inc.*, 2017 WI 75, ¶22, 377 Wis. 2d 496, 898 N.W.2d 741 (citation omitted). "Whether the circuit court properly granted summary judgment is a question of law that this court reviews de novo." *Racine Cnty. v. Oracular Milwaukee, Inc.*, 2010 WI 25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88 (citation omitted).

¶18　In this case, Luke moved for summary judgment on the grounds that Rebecca abandoned the children within the meaning of WIS. STAT. § 48.415(1)(a)2. and § 48.415(1)(a)3. by failing to visit or communicate from late 2017 through 2018. Pursuant to these grounds, abandonment can be established by proving either "[t]hat the child has been placed, or continued in a placement, outside the parent's home by a court order containing the notice required … and

the parent has failed to visit or communicate with the child for a period of 3 months or longer" or "[t]he child has been left by the parent with any person, the parent knows or could discover the whereabouts of the child and the parent has failed to visit or communicate with the child for a period of 6 months or longer." Sec. 48.415(1)(a)2.-3. However, abandonment cannot be established if the parent proves by a preponderance of the evidence that there was "good cause" for failing to visit or communicate with the child during the alleged period of abandonment. Sec. 48.415(1)(c).

¶19    Here, Rebecca argues that her trial counsel failed to present evidence of good cause in defense of Luke's motion for summary judgment, and therefore, her trial counsel was ineffective. She contends that her trial counsel failed to present (1) evidence of domestic violence during her relationship with Luke and (2) evidence that Luke's wife refused to allow contact between Rebecca and her children.

¶20    Specifically, Rebecca points to a disorderly conduct charge from August 2017 in which Luke forcefully removed Rebecca from his property and threatened Rebecca's boyfriend, and Rebecca points to her deposition testimony wherein she claims that, among other things, Luke choked her, stabbed her, and held her head under water. She also provides an instance from December 2017 when she sent Luke's wife a Facebook message asking for an address for the children and Luke's wife either failed to respond or responded saying that Rebecca had no right to that information.[10]  Overall, she argues that she established good

_____

[10] Luke's wife claimed that she responded to Rebecca's Facebook message saying that Rebecca needed to send her request through the proper channels. The nature of the response, however, is immaterial.

cause for her failure to visit or communicate from late 2017 through 2018 based on the domestic abuse and Luke's wife's interference, and therefore, summary judgment was inappropriate.

¶21    In granting Luke's motion for summary judgment, the circuit court rejected Rebecca's arguments, stating that even had this information been presented, it would not have changed the outcome and created a triable issue. *See Yahnke v. Carson*, 2000 WI 74, ¶10, 236 Wis. 2d 257, 613 N.W.2d 102 ("The well-established purpose of summary judgment procedure is to determine the existence of genuine factual disputes in order to 'avoid trials where there is nothing to try.'" (citation omitted)).  This court agrees with the circuit court's assessment.

¶22    As the circuit court aptly stated when it denied Rebecca's postdisposition motion,

> any domestic violence, whatever its level, whatever its nature, during the time these parents were together as a couple, which ended in 2015, is totally irrelevant to whether she met that condition established by the family court, and one domestic violence citation from August 8 of 2017 which precedes the period of abandonment also does not raise a triable issue of material fact. There was at least a three month and at least a six-month period in 2018 where she didn't do anything to change the status of her contact with the kids.

¶23    Nevertheless, Rebecca argues that the domestic violence that existed in her relationship with Luke gave her a "good faith reasonable belief" that any efforts to communicate with her children would have failed.  However, Rebecca fails to demonstrate that she even made an attempt to have contact with her children during the alleged period of abandonment and that any attempts at visitation or contact failed because of any past domestic violence that occurred

11

between her and Luke. Consequently, her argument is based on mere speculation,[11] and her good cause argument premised on past domestic violence in her relationship with Luke does not present a genuine issue of material fact that precludes summary judgment.

¶24 Rebecca's argument regarding interference from Luke's wife suffers from a similar flaw. Here, Rebecca points to one attempt in late 2017 in which she contacted Luke's wife to obtain contact information for the children. Rebecca then claims that Luke's wife refused to provide that information because Rebecca had no rights. Rebecca then admits in her deposition that she never made another attempt at contact through the remainder of 2017 and throughout 2018. With only one attempt at contact, she cannot raise a good cause defense premised on interference by Luke's wife that creates a genuine issue of material fact that precludes summary judgment.

¶25 Along the same lines, Rebecca argues that she believed that contact with Luke and Luke's wife would not "get [her] anywhere" and "that most of this needs to go through the court." However, Rebecca again fails to provide any attempts to "go through the court" to remedy the interference she claims to have received from Luke and his wife. There is, therefore, no genuine issue of material fact that precludes summary judgment. *See Strasser*, 236 Wis. 2d 435, ¶32.

¶26 Consequently, this court concludes that Rebecca did not receive ineffective assistance of counsel. Even if trial counsel had raised the good cause

---

[11] This court notes that trial counsel testified at the *Machner* hearing that he was aware of domestic violence in Rebecca's relationship with Luke "[i]n a broad sense," but he could not recall that he "reviewed anything that would have been consistent with that."

defenses that Rebecca currently identifies, it would not have changed the outcome of the motion for summary judgment. *See **State v. Erickson***, 227 Wis. 2d 758, 769, 596 N.W.2d 749 (1999) (defining prejudice occurs as counsel's error is of such magnitude that there is a "reasonable probability" that but for the error the outcome would have been different).

## II.      Claim of Judicial Bias

¶27     Rebecca additionally raises an argument that the circuit court was objectively biased and the circuit court's comment at the end of the disposition hearing that it left time to process the adoption indicates that the circuit court had predetermined the outcome of the case.

¶28     Following the circuit court's decision to terminate Rebecca's parental rights, Rebecca and her trial counsel were excused from the courtroom. The following exchange then took place:

> THE COURT: So I can do these adoptions right now.  If you think it's feasible, we could take 5 to 10 minutes and get the kids on the Zoom if you want them to join us or I can get you another date, but I purposely left a half hour this afternoon because I think we need to get this done. Why don't we all just take 5 minutes, catch your breath, talk to each other.  If they want to join by Zoom, I would love to have them.
>
> [COUNSEL]:  They would love that.
>
> THE COURT:  Okay.  Why don't we take 5.

Rebecca argues that the circuit court's comments here demonstrate that it decided to "pre-allot time" for the adoption proceedings because it had predetermined that termination of Rebecca's parental rights was in the children's best interests.  This

court disagrees and concludes that the circuit court's comments do not rise to the level of objective bias.

¶29    "The right to an impartial judge is fundamental to our notion of due process." *Miller v. Carroll*, 2020 WI 56, ¶15, 392 Wis. 2d 49, 944 N.W.2d 542 (citation omitted). "We presume that a judge has acted fairly, impartially, and without bias." *Id.*, ¶16. The party asserting judicial bias bears the burden of overcoming the presumption by showing bias by a preponderance of the evidence. *Id.* If the presumption is rebutted, the result is a due process violation, and such an error is "structural and not subject to a harmless error analysis." *Id.* "Whether a circuit court's partiality can be questioned is a matter of law that we review independently." *State v. Goodson*, 2009 WI App 107, ¶7, 320 Wis. 2d 166, 771 N.W.2d 385.

¶30    In this case, Rebecca argues that the judge was objectively biased. *See Miller*, 392 Wis. 2d 49, ¶21 (defining the two categories of judicial bias as subjective bias and objective bias). "Objective bias can exist in two situations: (1) where there is an appearance of bias; and (2) where objective facts demonstrate that a judge treated a party unfairly." *State v. Marcotte*, 2020 WI App 28, ¶17, 392 Wis. 2d 183, 943 N.W.2d 911. "The appearance of partiality constitutes objective bias when a reasonable person would conclude 'that the average judge could not be trusted to hold the balance nice, clear, and true under all the circumstances.'" *Id.* (citation omitted). Where the appearance of bias "reveals a great risk of actual bias, the presumption of impartiality is rebutted, and a due process violation occurs." *Id.* (citation omitted).

¶31    In denying Rebecca's postconviction motion, the circuit court stated:

> I can tell you the way the dispositional hearing unfolded, I listened to all of the evidence, I took the closing arguments of lawyers, I then concluded as a matter of law it was in the children's best interest to terminate [Rebecca]'s parental rights, and then I tailored my dispositional comments to leave some time at the end to effectuate the adoption. So I was not biased against [Rebecca] in any fashion. I did not make up my mind prior to hearing the evidence and argument.

¶32 This court agrees that there is no indication of objective bias here. Over the course of two days, the circuit court heard extensive testimony during the disposition hearing from Luke, his wife, Rebecca, and the children's therapists. Then, following the testimony, the circuit court provided a lengthy analysis of that testimony and applied the factors found in WIS. STAT. § 48.426(3). Any comment that the circuit court made following the conclusion of the disposition hearing about moving forward with the petitions to have Luke's wife adopt the children does not rise to the level of objective bias.

## CONCLUSION

¶33 This court concludes that Rebecca's trial counsel was not ineffective for failing to raise two good cause defenses premised on alleged domestic abuse that existed between her and Luke and any interference from Luke's wife with Rebecca's attempt to contact the children. This court also concludes that the circuit court's comment about processing the adoption following the disposition hearing does not rise to the level of objective bias. Accordingly, this court affirms.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

15