Cathy R. YAHNKE, Bruce E. Yahnke, Melissa Yahnke, and Bruce Yahnke, Jr., Plaintiffs-Appellants,

The CONNECTICUT INDEMNITY COMPANY, Plaintiff-Co-Appellant,

v.

Larry V. CARSON, M.D., Jovan L. Djokovic, M.D., Physicians Insurance Company of Wisconsin, Inc., and Patients Compensation Fund, Defendants-Respondents-Petitioners,

MERCY HOSPITAL OF JANESVILLE, Wisconsin Development Foundation, Inc., Ohic Insurance Company, Defendant-Respondent.

Supreme Court

*No. 99–0056. Oral argument May 25, 2000.—Decided June 30, 2000.*

2000 WI 74

(Also reported in 613 N.W.2d 102.)

For the defendants-respondents-petitioners there were briefs by *Barrett J. Corneille, David J. Pliner* and Corneille Law Group, L.L.C., Madison, and oral argument by *David J. Pliner*.

For the plaintiffs-appellants there was a brief by *Thomas E. Greenwald* and *Oliver, Close, Worden, Winkler & Greenwald*, Rockford, Illinois, and oral argument by *Thomas E. Greenwald*.

¶ 1. DIANE S. SYKES, J. This case raises the question of whether Wisconsin should adopt the federal "sham affidavit" rule as part of its summary judgment procedure. The issue arises because the plaintiffs in this medical malpractice action responded to the defendants' summary judgment motion by submitting an expert witness affidavit that contradicted the expert's deposition testimony. The circuit court applied the federal rule, which generally prohibits affidavits that contradict prior deposition testimony from creating issues of fact for trial, and granted summary judgment dismissing the action.

¶ 2. The court of appeals reversed, deferring to this court on whether to adopt the federal "sham affidavit" rule and concluding that the affidavit here was sufficient to create a genuine issue of material fact under current summary judgment procedure. We accepted review and now adopt the federal "sham affidavit" rule as an effective tool for circuit courts to use in evaluating the existence of genuine factual issues on motions for summary judgment. Therefore, we reverse.

¶ 3. The relevant facts are as follows. In July 1993, Cathy Yahnke underwent carpal tunnel surgery performed by Dr. Larry V. Carson. Shortly after the surgery, Yahnke developed a disfiguring condition in her right hand and arm known as "Volkman's Contracture," a forced contracture of the forearm, wrist and hand inflection of the fingers. Yahnke and her family sued Carson, Dr. Jovan Djokovic, the anesthesiologist, and Mercy Hospital for malpractice.

¶ 4. During discovery, the Yahnkes named two medical experts, Dr. Safwan Jaradeh, a neurologist, and Dr. Hani Matloub, a surgeon, both of whom had treated Yahnke after the surgery. After some delay, both were made available for deposition. In their depositions, neither expert was able to state that any of the defendants had breached the standard of care owed to Yahnke. Jaradeh, in fact, admitted that he was not qualified to render an opinion on Carson's work (the circuit court noted that Jaradeh is a neurologist, not a surgeon). Matloub, the surgical expert, was asked numerous questions about the cause of Yahnke's condition and was unable to link it to the surgery performed by Carson. At the end of his deposition, Matloub was asked a summarization question: "Given your testimony, is it accurate to say that you do not have any criticism of the standard of care utilized by Dr. Carson in his care and treatment of the patient?" Matloub replied, "That's correct."

¶ 5. Carson, Djokovic and Mercy Hospital each moved for summary judgment, arguing that the Yahnkes' expert witnesses failed to establish negligence in connection with Yahnke's surgery. The Yahnkes responded to the motion by first asking leave of the court to name new experts. The circuit court denied the motion.

¶ 6. The Yahnkes then changed counsel and produced affidavits from Jaradeh and Matloub that stated that Yahnke's contracture resulted from nerve injury she sustained during the surgery; that the most likely cause of this injury was inadequate blood flow to her arm; and that the lack of blood flow was caused by excessive pressure on her upper arm most likely caused by a tourniquet or perhaps a tightly inflated blood pressure cuff. Matloub's affidavit stated that Volkman's Contracture would not normally occur if the surgeon performed his work within the ordinary standard of care.

¶ 7. The affidavits obviously contradicted the earlier deposition testimony. Matloub's affidavit attempted to explain the contradiction:

> The testimony I gave at my deposition held on May 15, 1998. . .was based upon my considering only the quoted testimony of Dr. Jaradeh or quoted portions of certain identified EMG reports and not any other records or my examinations of Cathy Yahnke, my treatment of Cathy Yahnke, my discussions with Dr. Brad Grunert and Dr. Jaradeh or other information which I have acquired regarding Cathy Yahnke. The opinions that I have expressed in the preceding portions of this affidavit are based upon much more information than the limited information which I was asked to consider and which I was asked to assume was correct by the attorneys asking me those questions.

¶ 8. The Circuit Court for Rock County, the Honorable Richard T. Werner, granted summary judgment in favor of Djokovic (the anesthesiologist) and Mercy Hospital, because the plaintiffs' experts were not qualified to express opinions about the standard of care for anesthesiologists and had not even mentioned any

problems with the care provided by the hospital's employees. The circuit court also granted Carson's motion, noting that: 1) Jaradeh had no opinion about the surgeon's standard of care and was unqualified to testify about it in any event, and 2) Matloub's affidavit directly contradicted his deposition testimony. As to the contradictory affidavit, the court found the explanation for the contradiction to be "unconvincing and, more importantly, not supported by the record." The court explained:

> This affidavit contradicts his deposition testimony. He explains this by stating that his opinions at deposition were strictly limited to a review of the Mercy Hospital surgery records. This is simply not true. A review of Dr. Matloub's deposition reveals that he reviewed the Mercy Hospital operative records, subsequent EMG results, and Mayo Clinic analysis of Mrs. Yahnke's muscle tissue. He had reviewed Mrs. Yahnke's medical chart and records at Froedtert Memorial Lutheran Hospital. He consulted with Dr. Grunert and co-authored a letter concerning Mrs. Yahnke in March, 1998. He also spoke with Dr. Jaradeh about Mrs. Yahnke. In short, before expressing his opinion at his deposition, Dr. Matloub had reviewed a considerable amount of medical information concerning Mrs. Yahnke and her condition.

Referring to federal case law on the effect of affidavits that conflict with deposition testimony, the court concluded that Matloub's affidavit was insufficient to create a genuine factual issue for trial, and entered summary judgment dismissing the case in its entirety.

¶ 9. The Yahnkes appealed, and the court of appeals reversed in part, concluding that the Matloub affidavit created a genuine factual issue about whether

Carson had breached the standard of care required of a surgeon.[1] The court noted the federal rule prohibiting parties from creating a factual dispute on summary judgment by submitting an affidavit that conflicts with earlier deposition testimony, but deferred to this court to adopt or reject the rule for Wisconsin. We accepted review.

¶ 10. We review an order for summary judgment de novo, using the same methodology as the circuit court. *Nierengarten v. Lutheran Soc. Servs.*, 219 Wis. 2d 686, 694, 580 N.W.2d 320 (1998). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2)(1995–96).[2] The well-established purpose of summary judgment procedure is to determine the existence of genuine factual disputes in order to "avoid trials where there is nothing to try." *Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton*, 101 Wis. 2d 460, 470, 304 N.W.2d 752 (1981); *Caulfield v. Caulfield*, 183 Wis. 2d 83, 91, 515 N.W.2d 278 (Ct. App. 1994). Although our review is de novo, we benefit from the analyses of the circuit court and the court of appeals. *Nierengarten*, 219 Wis. 2d at 694.

---

[1] The court of appeals' unpublished decision affirmed the circuit court's order of summary judgment in favor of Djokovic and Mercy Hospital, as well as its rejection of the *res ipsa loquitur* doctrine, and those issues are not before us for review.

[2] Unless otherwise noted, all further references to the Wisconsin Statutes are to the 1995–96 version.

██

¶ 11. Under Wisconsin law as it now stands, an affidavit submitted in response to a summary judgment motion can suffice to create an issue of fact for trial and defeat summary judgment even if it flatly contradicts the witness's earlier deposition testimony. An affidavit that conflicts with prior testimony is generally thought to create a credibility question, and a circuit court does not decide issues of credibility on summary judgment. *Pomplun v. Rockwell Int'l Corp.*, 203 Wis. 2d 303, 306–07, 552 N.W.2d 632 (Ct. App. 1996)(citing *Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980)). However, the ability to create trial issues by submitting affidavits in direct contradiction of deposition testimony reduces the effectiveness of summary judgment as a tool for separating the genuine factual disputes from the ones that are not, and undermines summary judgment's purpose of avoiding unnecessary trials. The federal courts have responded to this phenomenon by developing the so-called "sham affidavit" rule, but to date, Wisconsin has not followed suit.

¶ 12. The court of appeals has split on this issue. In *Wolski v. Wilson*, 174 Wis. 2d 533, 539–41, 497 N.W.2d 794 (Ct. App. 1993), the court of appeals held that an affidavit submitted by the plaintiff in contradiction of his earlier deposition testimony was sufficient to create a material issue of fact, precluding summary judgment. The court specifically concluded that any changes in summary judgment procedure must come either from the legislature or this court. *Id.* at 541.

¶ 13. However, in *Helland v. Froedert Memorial Lutheran Hospital.*, 229 Wis. 2d 751, 601 N.W.2d 318 (Ct. App. 1999), the court of appeals essentially applied

the federal "sham affidavit" rule without expressly adopting it. In *Helland*, a wrongful discharge case, the plaintiff testified in her deposition that she had received a particular employee manual from her employer which established that her employment was at-will and not contractual. *Id.* at 760. The employer then moved for summary judgment on the basis of the manual, the plaintiff's deposition testimony, and the law applicable to at-will employees. *Id.* The plaintiff responded to the motion by submitting an affidavit claiming that she had not, in fact, received the manual. *Id.* The court of appeals concluded that the contradictory affidavit was insufficient to create a genuine issue of material fact. *Id.*

¶ 14. We were presented with the opportunity to address this question in *Morris v. Juneau County*, 219 Wis. 2d 543, 579 N.W.2d 690 (1998), but declined to do so. In *Morris*, as in *Wolski* and *Helland*, the plaintiff filed an affidavit in opposition to summary judgment that contradicted her prior deposition testimony. Although we acknowledged that this court is the proper forum for the adoption of a "sham affidavit" rule, we decided *Morris* on other grounds and declined to reach the issue. *Id.* at 563.

¶ 15. Most federal appellate circuits have adopted the "sham affidavit" rule precluding the creation of genuine issues of fact on summary judgment by the submission of an affidavit that directly contradicts earlier deposition testimony. *See Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 5 (1st Cir. 1994); *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969); *Martin v. Merrell Dow Pharm., Inc.*, 851 F.2d 703, 706 (3d Cir. 1988); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495–96 (5th Cir.

1996); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861–62 (7th Cir. 1985); *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1364–65 (8th Cir. 1983); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975); *Franks v. Nimmo*, 796 F.2d 1230, 1237–38 (10th Cir. 1986); *Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657–59 (11th Cir. 1984); *Sinskey v. Pharmacia Ophthalmics, Inc.*, 982 F.2d 494, 498 (Fed. Cir. 1992). The rule is based in part on the proposition that testimony given in depositions, in which witnesses speak for themselves, subject to the give and take of examination and the opportunity for cross-examination, is more trustworthy than testimony by affidavit, which is almost always prepared by attorneys. *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67 (7th Cir. 1995).

¶ 16. The rule is also rooted in the very mission of the summary judgment procedure:

> When confronted with the question of whether a party should be allowed to create his own issue of fact by an affidavit contradicting his prior deposition testimony, the Court of Appeals for the Second Circuit held that no *genuine* issue of fact was raised. *Perma Research & Development Co. v. Singer Co.*, 410 F. 2d 572, 578 (2d Cir. 1969). Therein the Court noted:
>
>> "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for

screening out sham issues of fact." 410 F. 2d at 578.

> The very object of summary judgment is to separate real and genuine issues from those that are formal or pretended, so that only the former may subject the moving party to the burden of trial.

*Radobenko*, 520 F. 2d at 544. Thus, although it is called the "sham" affidavit rule, an affidavit that is disregarded because it contradicts prior deposition testimony is not necessarily "sham" in the sense that it is fraudulent or offered for improper purposes. Rather, the rule recognizes that contradictory affidavits tend to create sham, rather than genuine, issues.

¶ 17. The federal rule has also been extended to non-party affidavits. In a case remarkably similar to this one, involving an expert witness affidavit that contradicted the expert's deposition testimony, the United States Court of Appeals for the Seventh Circuit stated:

> We can think of no reason. . .not to apply this rule to the present case involving the testimony and affidavit of the plaintiff's sole expert witness. The purpose of summary judgment motions—"to weed out unfounded claims, specious denials, and sham defenses,"—is served by a rule that prevents a party from creating issues of credibility by allowing one of its witnesses to contradict his own prior testimony.

*Adelman-Tremblay v. Jewel Cos., Inc.*, 859 F.2d 517, 521 (7th Cir. 1988)(citations omitted); *see also Rios v. Bigler*, 67 F.3d 1543, 1550–51 (10th Cir. 1995).

¶ 18. The federal rule, however, is not absolute, and is subject to certain important exceptions. If the witness can establish a reasonable explanation for the contradiction between his or her affidavit and his or her deposition—that the affidavit clarifies ambiguous

or confusing deposition testimony, for example, or that the witness's later statements are based on newly discovered evidence—then the conflicting affidavit may be considered in the summary judgment equation. *Adelman-Tremblay*, 859 F.2d at 520–21; *Rios*, 67 F. 3d at 1551. The Tenth Circuit describes the "sham affidavit" rule and its exceptions in this way:

> To determine whether a contrary affidavit seeks to create a sham fact issue, we determine whether: (1) "the affiant was cross-examined during his earlier testimony;" (2) "the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence;" and (3) "the earlier testimony reflects confusion which the affidavit attempts to explain."

*Id.* (quoting *Franks*, 796 F.2d at 1237).

¶ 19. The federal and state rules of civil procedure governing motions for summary judgment are virtually identical. *See* Judicial Council Committee Note, 1974, Wis. Stat. Ann. § 802.08 (West 1994); Fed. R. Civ. P. 56(c); *see also Transportation Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 291, 507 N.W.2d 136 (Ct. App. 1993); *Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 664, 476 N.W.2d 593 (Ct. App. 1991). The function of summary judgment procedure in federal and state courts is the same. "[W]here a Wisconsin rule of Civil Procedure is based on a Federal Rule of Civil Procedure, decisions of the federal courts, to the extent they show a pattern of construction, are considered persuasive authority." *Neylan v. Vorwald*, 124 Wis. 2d 85, 99, 368 N.W.2d 648 (1985).

¶ 20. Wisconsin courts have previously brought this state's summary judgment methodology into alignment with federal law in certain important respects. In *Transportation Insurance* and *Fortier,* the court of appeals adopted the United States Supreme Court's *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986), analyses regarding burden of proof in summary judgment motions. *Transportation Ins. Co.,* 179 Wis. 2d at 292; *Fortier,* 164 Wis. 2d at 664–66. This is a similar situation. We conclude that the federal "sham affidavit" rule furthers the purposes of summary judgment procedure in this state by helping circuit courts determine the existence of genuine factual disputes, thereby avoiding unnecessary trials and conserving the resources of the courts and litigants alike. Accordingly, we adopt the rule for Wisconsin.

¶ 21. More specifically, we hold that for purposes of evaluating motions for summary judgment pursuant to Wis. Stat. § 802.08, an affidavit that directly contradicts prior deposition testimony is generally insufficient to create a genuine issue of fact for trial, unless the contradiction is adequately explained. To determine whether the witness's explanation for the contradictory affidavit is adequate, the circuit court should examine: (1) Whether the deposition afforded the opportunity for direct and cross-examination of the witness; (2) whether the witness had access to pertinent evidence or information prior to or at the time of his or her deposition, or whether the affidavit was based upon newly discovered evidence not known or available at the time of the deposition; and (3) whether the earlier deposition testimony reflects confusion, lack

of recollection or other legitimate lack of clarity that the affidavit justifiably attempts to explain.

■

¶ 22. Applying the rule here, we conclude that summary judgment was appropriate in this case. The record reflects that Matloub's deposition afforded the opportunity for both direct and cross-examination. Furthermore, the circuit court found, and Matloub's deposition testimony confirms, that Matloub had access to and indeed reviewed substantial medical information prior to his deposition, and conducted a wide-ranging evaluation of Yahnke's condition in order to determine its cause. He was, after all, one of her treating physicians and not merely an expert hired for purposes of litigation. His explanation for the contradictions between his deposition testimony and his affidavit—that his deposition testimony was based upon "limited information"—is itself a contradiction, inasmuch as he testified in deposition to having reviewed a great deal of medical information in an attempt to diagnose and treat Yahnke's condition. His affidavit identifies no newly discovered evidence that would explain the change in testimony. Finally, Matloub's deposition testimony does not reveal any confusion that would require clarification or explanation in a subsequent affidavit. He was quite unequivocal in his inability to link her condition to the surgery.

¶ 23. Accordingly, we adopt the federal "sham affidavit" rule for use in Wisconsin's summary judgment procedure. Further, we apply it here to conclude that, because the plaintiffs' expert witness affidavit directly contradicted the expert's deposition testimony without adequate explanation, the circuit court prop-

erly granted Carson's motion for summary judgment dismissing the case.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 24. WILLIAM A. BABLITCH, J. *(dissenting)*. I conclude that the adoption of the so-called "sham affidavit" rule is unwarranted. I therefore respectfully dissent.

¶ 25. We have stated on several past occasions that no other statutory provision has been litigated as frequently as Wis. Stat. § 802.08, the summary judgment statute. *Kraemer Bros. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 565, 278 N.W.2d 857 (1979) (citing *Leszczynski v. Surges*, 30 Wis. 2d 534, 537, 141 N.W.2d 261 (1966)). Although frequent experience with summary judgment has turned it into a familiar motion, we must remember that it is a drastic remedy. *Nelson v. Albrechtson*, 93 Wis. 2d 552, 555, 287 N.W.2d 811 (1980). "There is no absolute right to summary judgment." *Zimmer v. Daun*, 40 Wis. 2d 627, 630, 162 N.W.2d 626 (1968). It is simply a procedural devise to provide prompt relief when the pending action presents no triable issue.

¶ 26. The methodology employed by the court on motion for summary judgment is well established. Adding the sham affidavit rule to this procedure is unwise and unnecessary.

¶ 27. The rule is unwise because it puts the court into the position of weighing the evidence and choosing between competing reasonable inferences, a task heretofore prohibited on summary judgment. *Pomplun v. Rockwell Int'l Corp.*, 203 Wis. 2d 303, 306–07, 552 N.W.2d 632 (Ct. App. 1996); *Fischer v. Doylestown Fire*

272

*Dep't,* 199 Wis. 2d Wis. 2d 83, 87–88, 543 N.W.2d 575 (1995). As a result, the "sham affidavit" rule, in my opinion, improperly usurps the role of the jury.

¶ 28. This distortion of the division of labor between judge and jury by adopting the "sham affidavit" rule is unnecessary. Summary judgment is a procedural tool available to a litigant seeking to flush out the fatal defect in an opponent's case. It is not the only tool in the procedural box and should not be viewed in isolation from other statutes and rules. For example, if a court decides, at any time, that affidavits presented for or against a motion for summary judgment were made in bad faith, the judge may order the party who submitted the affidavits to pay to the other party the costs, including attorney fees, which the filing of the affidavits caused the other party to incur. Wis. Stat. § 802.08(5).

¶ 29. In addition, if the summary judgment motion is denied, a witness may be impeached at trial with prior inconsistent statements. Wis. Stat. § 908.01(4)(a)1. A defendant may move for a judgment as a matter of law at the close of the plaintiff's evidence. Wis. Stat. § 805.14(3). An attorney who files papers with the court for any improper purpose may face sanctions under Wis. Stat. § 802.05. And, as the bar is well aware, there is significant bite to a determination that a suit has been continued frivolously. *See Jandrt v. Jerome Foods, Inc.,* 227 Wis. 2d 531, 597 N.W.2d 744 (1999), *reconsideration denied,* 230 Wis. 2d 246, 601 N.W.2d 650 (1999).

¶ 30. I conclude that the "sham affidavit" rule adds nothing to our summary judgment process. Even its unfortunate name, "sham affidavit," reflects negatively upon the work of the bench and bar. As a result, I cannot join the majority's decision to adopt this rule.

¶ 31. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join in this dissent.