COURT OF APPEALS
DECISION
DATED AND FILED

March 10, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1425**

STATE OF WISCONSIN

Cir. Ct. No. 2022CV178

IN COURT OF APPEALS
DISTRICT III

---

THE ESTATE OF HARVEY BARTSCH, JR.,

 PLAINTIFF-APPELLANT,

V.

RANDY FROKJER,

 DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Lincoln County: LOUIS J. MOLEPSKE, JR., Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The Estate of Harvey Bartsch, Jr., appeals from a circuit court order granting Attorney Randy Frokjer's motion for summary

judgment. The court granted the motion for summary judgment on several grounds. We conclude that one of those grounds is dispositive to this appeal: the equitable doctrine of laches applies to bar the Estate's claims as a matter of law, and the court did not erroneously exercise its discretion by dismissing the Estate's lawsuit on that ground. Accordingly, we affirm.

## BACKGROUND

¶2    In 2018, Harvey Bartsch, Jr., ("Bartsch Jr.") retained Frokjer to represent him in a Vilas County tax foreclosure case involving certain properties that Bartsch Jr. owned and that were valued at over $1 million. At a January 10, 2019 hearing, the circuit court in the foreclosure case granted Bartsch Jr. one day to "redeem his property by a payment in full of all outstanding taxes" and other applicable fees and costs, totaling $136,469.36. Frokjer advised the court that the payment could be made within that timeframe.

¶3    Prior to the circuit court's ruling in the foreclosure case, a friend of Harvey Bartsch III—Bartsch Jr.'s power of attorney—offered to loan Bartsch Jr. the money necessary to cure the tax liens in exchange for repayment of the loan "plus 25% of the loaned amount." In addition, Bartsch III had arranged for a loan from UW Credit Union as an alternative to his friend's loan. However, following the court's ruling, Bartsch III could not obtain either loan within the time period required by the court.

¶4    The Bartsches then informed Frokjer about the impossibility of obtaining either loan, and Frokjer, according to Bartsch III, said "that he could provide the money on the same terms that [Bartsch III's friend] had offered." Bartsch III, as Bartsch Jr.'s power of attorney, and Frokjer entered into a written agreement on January 11, 2019, whereby Frokjer agreed to pay the tax liens by the

court-imposed deadline. The agreement further provided that Frokjer was entitled to repayment of the loan and an additional $250,000 from the sale of the properties. Bartsch III, still acting as power of attorney, also signed a "waiver of conflict of interest" document. Thereafter, Frokjer paid the tax liens in accordance with the written agreement.

¶5      Approximately one week later, Vilas County determined that it had overcharged Bartsch Jr. by over $22,000, and it issued a refund. The refund was sent to Frokjer, who kept the funds. Frokjer claimed that he informed Bartsch III of the refund in July 2019 and that he deducted that amount from the money owed under the agreement.

¶6      In June 2019, Frokjer commenced a lawsuit against both Bartsch Jr. and Bartsch III for breach of contract. Frokjer alleged that the Bartsches had violated the agreement by failing to list the properties for sale. The Bartsches did not file any counterclaims against Frokjer.

¶7      In September 2019, a circuit court appointed a guardian for Bartsch Jr. following Vilas County's petition for temporary and permanent guardianship. Frokjer's lawsuit was voluntarily dismissed with prejudice in February 2022 after the properties were sold by Bartsch Jr.'s guardian, and Frokjer received the amount due under the agreement.

¶8      Bartsch Jr. passed away on December 30, 2021, and Bartsch III became the personal representative of his estate. Shortly before Bartsch Jr.'s death, Bartsch III filed a lawsuit against Bartsch Jr.'s guardian "with respect to the sale of the … real estate transaction and other actions by" the guardian. That lawsuit was later dismissed by the circuit court.

¶9      The Estate then filed the present lawsuit against Frokjer on December 20, 2022, alleging claims for breach of fiduciary duty; recission of the agreement (based on fraud, unfairness, unreasonableness, unconscionableness, duress, coercion, undue influence, breach of fiduciary duty, or other fraud); unjust enrichment; and breach of contract. The Estate sought judgment against Frokjer in the amount of $250,000. Frokjer filed a motion for summary judgment. As is relevant here, Frokjer argued that the equitable doctrine of laches barred each of the Estate's claims.

¶10      The circuit court agreed with Frokjer. The court concluded that the Estate unreasonably delayed bringing the lawsuit against Frokjer until four years after the agreement was signed and that the lawsuit could have been brought as early as January 2019. Moreover, the court stated that the issues surrounding the agreement "potentially" "could have been brought" in Bartsch III's lawsuit against the guardian and that "[a]ll these issues were discussed in that case." In addition, the court determined that any admissible evidence did not support a finding that Bartsch Jr. was incompetent during the relevant time period, and, therefore, the delay was not reasonable.

¶11      According to the circuit court, Frokjer did not know that the Estate would raise its claims, and he suffered prejudice as a result of the Estate's delay in bringing this lawsuit. Specifically, the court noted that Frokjer paid $50,000 in irrecoverable income tax on the funds he received under the agreement, which "he would not have otherwise … paid." The court concluded that the payment of taxes can constitute economic prejudice. The court further concluded that Frokjer was prejudiced by the delay given the "[u]ncharged time" he put into satisfying his duty under the agreement and clearing the titles to the property while not acting as an attorney for Bartsch Jr. The court also noted that because of the delay,

Bartsch Jr. was not there to "testify and tell the Court" his side of the story. Accordingly, the court dismissed the lawsuit.

¶12  The Estate now appeals.[1]

## DISCUSSION

¶13  Although the parties raise several issues on appeal related to the circuit court's granting of Frokjer's motion for summary judgment, we conclude that one issue is dispositive. Namely, the equitable doctrine of laches applies to bar the Estate's claims as a matter of law, and the circuit court did not erroneously exercise its discretion by dismissing the Estate's lawsuit on that ground. Because this one issue is dispositive of this appeal, we limit our analysis accordingly. *See Barrows v. American Fam. Ins.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) (stating that we "need not address every issue raised by the parties when one issue is dispositive").

¶14  We review a grant of summary judgment de novo, using the same methodology as the circuit court. *Yahnke v. Carson*, 2000 WI 74, ¶10, 236 Wis. 2d 257, 613 N.W.2d 102. Summary judgment shall be awarded if "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

---

[1] The parties' appellate briefs do not comply with WIS. STAT. RULE 809.19(8)(bm) (2023-24), which requires a brief to "have page numbers centered in the bottom margin using Arabic numerals with sequential numbering starting at '1' on the cover." Our supreme court has explained that this pagination requirement "will match the page number to the page header applied by the eFiling system, avoiding the confusion of having two different page numbers." S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021). We admonish both parties that we expect them to follow our Rules of Appellate Procedure.

All references to the Wisconsin Statutes are to the 2023-24 version.

¶15    "Laches is an affirmative, equitable defense designed to bar relief when a claimant's failure to promptly bring a claim causes prejudice to the party having to defend against that claim." *Wisconsin Small Bus. United, Inc. v. Brennan*, 2020 WI 69, ¶11, 393 Wis. 2d 308, 946 N.W.2d 101.  "In Wisconsin, application of laches is premised on proof of three elements: (1) a party unreasonably delays in bringing a claim; (2) a second party lacks knowledge that the first party would raise that claim; and (3) the second party is prejudiced by the delay." *Id.*, ¶12.  "The party seeking application of laches bears the burden of proving each element." *Id.*  "Whether that burden is carried is a question of law." *Id.*  However, "[e]ven if all three elements are satisfied, application of laches is left to the sound discretion of the court asked to apply this equitable bar." *Id.*

¶16    The Estate does not challenge the circuit court's conclusion that Frokjer met his burden on the first and second elements of laches, and we do not address those elements further.  *See A.O. Smith Corp. v. Allstate Ins.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

¶17    Under the third element, "[w]hat amounts to prejudice … depends upon the facts and circumstances of each case, but it is generally held to be anything that places the party in a less favorable position." *Brennan*, 393 Wis. 2d 308, ¶19 (citation omitted).  There are generally two types of prejudice in the context of laches: evidentiary and economic.  *State ex rel. Wren v. Richardson*, 2019 WI 110, ¶33, 389 Wis. 2d 516, 936 N.W.2d 587.  Economic prejudice occurs when the "costs to the defendant have significantly increased due to the delay." *Id.*, ¶33 n.26 (citation omitted).

¶18    The Estate's main contention on appeal is that the circuit court erred by relying on Frokjer's payment of income tax on the funds he received under the

6

agreement to conclude that the delay in bringing the claims resulted in economic prejudice to him. The Estate argues that if a $250,000 judgment were entered against Frokjer, he "could deduct that expense and recover the taxes he previously paid." According to the Estate, a decision affirming the circuit court's holding "would greatly expand the application of the laches defense and would dramatically shorten the period in which any sort of financial claim could be brought."

¶19 We disagree with the Estate for several reasons. First, Frokjer was economically prejudiced by the unreasonable delay, in part, because he paid income tax without knowledge of the Estate's intent to challenge the agreement. Here, the Estate sought judgment against Frokjer in the amount of $250,000—the same amount upon which Frokjer paid income tax. As the circuit court recognized, the income tax Frokjer paid is money that Frokjer cannot recover. In other words, judgment against Frokjer on the Estate's claims would place him in a less favorable position (i.e., $50,000 less income), thereby increasing his costs due to the unreasonable delay. Even if Frokjer could recoup his losses by later tax filings, prejudice would still result in the short term by depriving Frokjer of $50,000. Had the Estate brought its claims either before or soon after Frokjer received his benefit under the agreement, the claims could have been addressed prior to the income tax being paid, or, at the very least, Frokjer would have been placed on notice that the $250,000 might need to be repaid to the Estate if the Estate were ultimately successful in its lawsuit.

¶20 Second, we agree with the circuit court that Frokjer was economically prejudiced by the unreasonable delay, in part, because he invested unpaid time and resources into satisfying his end of the agreement, enforcing the agreement, and clearing the properties' titles without knowledge of the Estate's

7

intent to challenge the agreement after Frokjer paid the tax liens necessary to avoid foreclosure on the properties. As Frokjer explains, his purchase of the properties via the agreement contained significant risk. In particular, Frokjer was aware at the time he entered the agreement that all but one of the properties may have required environmental cleanup due to contamination issues. In fact, the Forest Administrator for Vilas County testified at the January 10, 2019 hearing regarding the environmental issues and stated that the County hired a consultant to perform an environmental assessment. The consultant concluded that there might need to be "further investigation … to determine whether or not there may be some environmental contamination of those properties." Despite these concerns, given the court-imposed deadline, Frokjer fulfilled his obligations under the agreement without conducting an environmental assessment.

¶21    Afterward, Frokjer spent approximately 30 to 40 hours "cleaning up the titles" and obtaining "documents satisfactory to the title company in order to issue title insurance." Frokjer completed this work as an investor and, therefore, did not receive attorney fees. Later, Frokjer was required to file a lawsuit against the Bartsches for their failure to comply with the agreement to sell the properties. Eventually, the properties were sold, and the lawsuit was dismissed. At no time during this process was Frokjer made aware of the Estate's dissatisfaction with the agreement or of any intent to file claims against him. Stated differently, judgment against Frokjer on the Estate's claims would reward the Estate's delay in filing its lawsuit with the fruits of Frokjer's efforts, thereby placing Frokjer in a less favorable position than he would have occupied had the lawsuit been filed years previously.

¶22    Lastly, although not addressed by either party on appeal, we agree with the circuit court that Frokjer was evidentiarily prejudiced by the delay

because a key witness, Bartsch Jr., passed away prior to the Estate's lawsuit.[2] "Evidentiary prejudice … may arise where a plaintiff's delay in bringing an action has curtailed the defendant's ability to present a full and fair defense on the merits due to the loss of evidence, the death of a witness, or the unreliability of memories." *Wren*, 389 Wis. 2d 516, ¶33 (citation omitted). "The death of key witnesses is precisely the kind of thing laches is aimed at, particularly where … 'the decedent's knowledge is crucial to a party's defense.'" *Id.*, ¶34 (citation omitted).

¶23 Here, the allegations against Frokjer involved his representation of Bartsch Jr., including that Frokjer breached his fiduciary duty as Bartsch Jr.'s attorney; "induced by fraud" the agreement; and "procured" the agreement by coercion, duress, and undue influence. According to the Estate, Bartsch Jr. "was not given a reasonable opportunity to seek the advice of independent legal counsel" regarding the agreement, and the agreement was not "fair and reasonable."

¶24 In response to the lawsuit, Frokjer disputed the allegations against him pertaining to the agreement and his representation of Bartsch Jr. For example, Frokjer alleged that he expressly terminated his representation of Bartsch Jr. following the foreclosure ruling and that Bartsch Jr. had informed Frokjer that he

---

[2] In a conclusory fashion, the Estate asserts that "Bartsch Jr. was an incompetent man" and that the delay in bringing the lawsuit was therefore reasonable. The Estate raises this argument for the first time on appeal in its reply brief, and we therefore need not consider it further. *See A.O. Smith Corp. v. Allstate Ins.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998). Regardless, the Estate fails to address how the circuit court erred by determining that any evidence relied on to show that Bartsch Jr. was incompetent during the relevant time period would be inadmissible. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (stating that we need not consider undeveloped arguments).

was happy with the agreement and Frokjer's representation in the foreclosure case. Accordingly, Bartsch Jr.'s testimony—as Frokjer's former client and the individual with whom Frokjer entered the agreement—would be essential to Frokjer's defense on most, if not all, of the claims filed by the Estate. Bartsch Jr. did not pass away until December 2021, almost three years after the agreement was signed.

¶25     In all, Frokjer faced both economic and evidentiary prejudice as a result of the Estate's unreasonable delay in filing the present lawsuit. Frokjer prevented Vilas County from foreclosing on Bartsch Jr.'s properties, and, in doing so, he accepted all of the initial expense and risk associated with fulfilling his obligations under the agreement. The Estate now seeks to undo Frokjer's efforts in this regard years after the agreement was entered into; years after Frokjer spent unpaid time and effort to clear the titles; years after Frokjer sued to obtain the bargained-for income; and, importantly, almost a year after a key witness passed away.[3] The Estate was not necessarily required to file a lawsuit prior to Frokjer paying his income tax on the $250,000. However, when the prejudicial factors are considered as a whole, including the income tax Frokjer paid and the loss of a key evidentiary witness, Frokjer was prejudiced by the Estate's delay in bringing the lawsuit.

---

[3] The Estate further argues that a conclusion that Frokjer's payment of income tax constitutes economic prejudice is "not the only reasonable conclusion, as would have to be the case to make a finding of laches on summary judgment." However, as we have explained above, whether the party seeking application of laches met his or her burden of proving each element is a question of law. *See Wisconsin Small Bus. United, Inc. v. Brennan*, 2020 WI 69, ¶12, 393 Wis. 2d 308, 946 N.W.2d 101. Because there are no material factual issues surrounding the income tax Frokjer paid, we can determine economic prejudice as a matter of law.

¶26     The Estate does not argue that, if Frokjer met his burden of establishing the three elements of laches, the circuit court erroneously exercised its discretion by dismissing the lawsuit. *See A.O. Smith Corp.*, 222 Wis. 2d at 491. Therefore, having established that Frokjer met his burden on the three elements of laches as a matter of law, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11